IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| OPT OUT SERVICES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>oproutprescreen.com, et al.,<br><br>    Defendants. | No. 1-20-CV-443 (TSE/TCB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Opt Out Services LLC ("Plaintiff" or "OOS"), by counsel, submits this Memorandum in Support of its Motion for Default Judgment on its claim under the Federal Anti-Cybersquatting Consumer Protection Act against the Internet domain names oproutprescreen.com, optiutprescreen.com, optoutpredcreen.com, optoutpreescreen.com, optoutprrescreen.com, optpoutprescreen.com, and opyoutprescreen.com (the "Domain Names"),[1] and in support thereof states as follows:

**I.   INTRODUCTION**

OOS has filed a Motion with this Court under Federal Rule of Civil Procedure 55(b) for a default judgment transferring to it control of the Domain Names. Each of the Domain Names is confusingly similar to and/or dilutive of Plaintiff's OptOutPrescreen mark, which was distinctive and/or famous at the time that the Domain Names were registered and which remains distinctive and famous today. Each of the Domain Names was registered and is being maintained and used

---

[1] If this Motion is granted, Plaintiff requests that the Court dismiss the Second Count of *in rem* Trademark Infringement without prejudice given that the only relief being sought may be ordered pursuant to the First Count of *in rem* Cybersquatting.

by a registrant that lacks any rights or other interest in such Domain Names. Each of the Domain Names was registered in bad faith and/or is being used in bad faith without permission from Plaintiff.

By their default, the Defendant Domain Names each have conceded the truth of the allegations of Plaintiff's Complaint for cybersquatting. There is no genuine issue of fact remaining in this suit, and default judgment should be entered against the Domain Names providing OOS with the requested relief – transfer of the Domain Names to OOS.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff OOS And Its Trademark Rights

Opt Out Services LLC is a limited liability company organized and existing under the laws of Delaware with a principal business address of 12276 San Jose Blvd., Suite 427, Jacksonville, Florida 32223. Complaint ¶ 5, ECF No. 1 ("Compl."). OOS was created in 2004 to provide a centralized service to accept and process requests from consumers to "Opt-In" or "Opt-Out" of firm offers of credit or insurance in accordance with the Fair and Accurate Credit Transactions Act. 15 U.S.C. § 1681 et seq. *Id.* ¶ 19. OOS provides this service to consumers through a website and service available at www.optoutprescreen.com. *Id.* ¶ 20. OptOutPrescreen is the only service/site authorized by the major Consumer Credit Reporting Companies and regularly promoted by the U.S. Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB") to provide this service. *Id.*

As a result of the promotion of the OptOutPrescreen mark and OptOutPrescreen.com domain name by OOS, the FTC, and the CFPB, and the corresponding media coverage, consumers immediately associated the OptOutPrescreen mark and the OptOutPrescreen.com domain name with OOS. *Id.* ¶ 20=1. Through promotion of OptOutPrescreen by OOS, the FTC,

and the CFPB for nearly 15 years, the OptOutPrescreen mark has become famous and/or distinctive throughout the United States in connection with OOS's services. *Id.* ¶ 22.

OptOutPrescreen.com averages over 24,000 site "hits" per day and had nearly 9,000,000 visitor sessions in 2018 alone. *Id.* ¶ 23. Consumers have come to distinguish and recognize the legitimacy of OOS's services as a result of the use and widespread promotion of the OptOutPrescreen mark. *Id.* ¶ 25.

The OptOutPrescreen mark is entitled to common law trademark rights. *Id.* The OptOutPrescreen mark also is registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under incontestable registration number 4073252. *Id.* ¶ 26 & Ex. 8. OOS's federal registration of the OptOutPrescreen mark is *conclusive* evidence of the validity of the OptOutPrescreen mark, of OOS's ownership of the OptOutPrescreen mark, and of OOS's exclusive right to use the OptOutPrescreen mark in U.S. commerce. *Id.* ¶ 27.

**B.   Defendant Domain Names**

The listed owners of the Domain Names are identified in Paragraphs 6-12 of the Complaint. Compl. ¶¶ 6-12. Upon information and belief, certain of the Defendant Domain Names were registered by the same person or entity and/or are under the control of the same person or entity. *Id.* ¶ 39. The Defendant Domain Names represent unauthorized colorable imitations of the OptOutPrescreen mark. *Id.* ¶ 24. The use of close approximations of the OptOutPrescreen mark within the Defendant Domain Names and/or associated websites is without authorization from OOS. *Id.* ¶ 32.

**C.   The Instant Proceeding**

Plaintiff filed this action against the Defendant Domain Names on April 21, 2020. ECF No. 1. OOS seeks the transfer of the Domain Names to OOS for violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1), and if this Motion

is granted. requests that the Court dismiss the Second Count of *in rem* Trademark Infringement without prejudice given that the only relief being sought may be ordered pursuant to the First Count of *in rem* Cybersquatting.

On April 22, 2020, OOS provided the registered owner(s) of the Defendant Domain Names with notice of the alleged violations and a copy of the Complaint. *See* First Declaration of Ari Meltzer (ECF No. 2-2) ¶ 6 & Attach. 1. The notice was sent to the postal and e-mail addresses provided in the domain name registration records for the Domain Names. *Id*.

On April 23, 2020, OOS filed a Motion for Service By Publication. *See* ECF No. 2. On On April 24, 2020, the Court granted OOS's Motion and ordered OOS to publish the Order providing notice to the Defendants in *The Washington Post* or *The Washington Time* once within fourteen (14) days after the entry of the Order. *See* ECF No. 3. The Order further directed OOS to file a declaration describing the steps that OOS had taken to comply with the Order. *Id.*

OOS caused the Order of Service By Publication to be published in *The Washington Times* on April 30, 2020. *See* Second Declaration of Ari Meltzer (ECF No. 5 & Ex. A). OOS filed its declaration describing compliance with the Order on May 19, 2020. ECF No. 4. On July 23, 2020, the Clerk entered a default against the Domain Names. *See* ECF No. 6.

### III.     ARGUMENT

#### A.     This Court Has Jurisdiction to Enter Default Judgment Against the Defendant Domain Names.

The Court has jurisdiction to grant Plaintiff's motion and enter default judgment against the Domain Names because the Court has subject matter jurisdiction over this action as well as *in rem* jurisdiction over the Domain Names. The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a) (all federal trademark actions), 28 U.S.C. §§ 1331 (federal

question jurisdiction) and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks).  *See* Compl. ¶ 14.

This Court has *in rem* jurisdiction over the Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I) because OOS, through due diligence, was unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) by sending notice of the alleged violation and intent to proceed and publishing notice of the action as directed by the Court.  *See id*. ¶¶ 15, 44, 50.  *In rem* jurisdiction and venue are proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(C) because the .COM domain name registry operator, VeriSign, Inc., is in this judicial district, and the Defendant Domain Names are all .COM domain names.  *See Id*. ¶ 17.

### B. The Clerk Appropriately Entered Default as to the Domain Names.

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  The Clerk's entry of default against the Domain Names was required here because, as the docket reflects, the time for filing a responsive pleading had passed.

On April 23, 2020, OOS filed a Motion for Service By Publication.  *See* ECF No. 2.  On On April 24, 2020, the Court granted OOS's Motion and ordered OOS to publish the Order providing notice to the Defendants in *The Washington Post* or *The Washington Time* once within fourteen (14) days after the entry of the Order.  *See* ECF No. 3.  The Order further directed OOS to file a declaration describing the steps that OOS had taken to comply with the Order.  *Id.*

OOS caused the Order of Service By Publication to be published in *The Washington Times* on April 30, 2020.  *See* Second Declaration of Ari Meltzer (ECF No. 5 & Ex. A).  OOS filed its declaration describing compliance with the Order on May 19, 2020.  ECF No. 4.  The

Defendants did not request, and the Court did not grant, any formal extension of the deadlines prescribed in the April 24 Order, and the Defendant Domain Names have failed to answer or otherwise respond to Plaintiff's Complaint.

These facts, supported by the uncontroverted declarations filed in this action, demonstrate that the Defendant Domain Names (and anyone acting on their behalf) had constructive notice (if not actual notice) of this suit yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default as to the Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

### C.     Plaintiff is Entitled to a Default Judgment Against Defendants.

By failing to appear or otherwise defend against the Complaint, Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether the Complaint properly states a claim for relief.  *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).  This Court should conclude that Defendants have admitted the well-pled allegations set forth in Plaintiff's Complaint that establish Plaintiff's entitlement to a transfer of the Domain Names.  *See Agri-Supply Company, Inc. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006).

The ACPA provides that a person is liable to a trademark owner if that person has a bad faith intent to profit from the trademark owner's mark and the person registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of that mark.  15 U.S.C. § 1125(D)(1)(a); *see also Central Source LLC v. annualdcreditreport.com*, No. 14-cv-304, 2014 WL 3811162 at *6 (E.D. Va. Aug. 1, 2014) ("*Fundacion I*") (citing *People for the Ethical Treatment of Animals v. Doughnet*, 263 F.3d 359, 367 (4th Cir. 2001)); *Agri-Supply Co., Inc.*, 457 F. Supp. 2d at 662-63.  The Complaint pleads both that the Domain Names are confusingly

similar to OOS's distinctive and/or famous OptOutPrescreen mark and that the registration and use of the Domain Names was in bad faith. *See* Compl. ¶¶ 4, 42.

1. **The Distinctiveness of the OptOutPrescreen Mark.**

The OptOutPrescreen mark is now distinctive and famous and was distinctive and famous at the time of registration of the Domain Names. 15 U.S.C. §§ 1125(d)(1)(B)(i)(IX). Since 2004, OOS has used the OptOutPrescreen mark in interstate commerce to provide a centralized service to accept and process requests from consumers to "Opt-In" or "Opt-Out" of firm offers of credit or insurance in accordance with the Fair and Accurate Credit Transactions Act. 15 U.S.C. § 1681 et seq. Compl. ¶¶ 19-25. Through promotion of OptOutPrescreen by OOS, the FTC, and the CFPB for nearly 15 years, the OptOutPrescreen mark has become famous and/or distinctive throughout the United States in connection with OOS's services. *Id.* ¶ 22. Consumers have come to distinguish and recognize the legitimacy of OOS's services as a result of the use and widespread promotion of the OptOutPrescreen mark. *Id.* ¶ 25. OOS's federal registration for the OptOutPrescreen mark is *conclusive* evidence of the validity and distinctiveness of the mark. *Id.* ¶¶ 26-27. Accordingly, this Court previously recognized that Plaintiff's OptOutPrescreen mark is distinctive and should do so again here. *See* Proposed Finding of Fact and Recommendations, *Opt Out Services LLC v. optoutprescreened.com,* 19-CV-676(LO/JFA), 2019 WL 7340748, *3-4 (E.D. Va. Oct. 4, 2019), *report and recommendation adopted,* 19-CV-676, 2019 WL 7340296 (E.D. Va. Dec. 30, 2019).

2. **The Domain Names Are Confusingly Similar to the OptOutPrescreen Mark.**

The Domain Names are confusingly similar to the OptOutPrescreen mark pursuant to 15 U.S.C. §§ 1125(d)(1)(A)(ii)(I). Under the ACPA, courts look to the facial similarity of the domains to the marks to determine confusing similarity. *Coca-Cola Co. v. Purdy*, 382 F.3d 774,

783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's mark which are to be compared."). The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. *See Agri-Supply Co.*, 457 F. Supp. 2d at 663. Simply changing a few letters of a distinctive or famous mark (a practice known as typosquatting) is not sufficient to prevent confusing similarity. *See Fundacion I*, 2014 WL 3811162 at *7 (finding misspellings of annualcreditreport mark confusingly similar to registered mark); *Twin Disc. Inc. v. Twin Discs.cc*, No. 1:13–cv–1041, 2014 WL 1401850, at *4 (E.D. Va. Apr. 8, 2014) (finding misspelling of plaintiff's mark misleading to consumers); *Tex. Int'l Property Assocs. v. Hoerbiger Hold. AG*, 624 F. Supp. 2d 582, 588 (N.D. Tex. 2009) (finding horbiger.com confusingly similar to HOERBIGER mark); *Mashantucket Pequot Tribe v. Redican*, 403 F. Supp. 2d 184, 196 (D. Conn 2005) (recognizing likelihood of confusion from typographical error between foxwood.com and FOXWOODS mark).

Here, the Domain Names bear obvious facial similarity to the OptOutPrescreen mark. The Domain Names each closely resemble Plaintiff's OptOutPrescreen mark with only a couple minor variations. Further, the mere addition of a top-level domain signifier, such as .com, to a protected trademark does not diminish the confusing similarity. *See Investools, Inc. v. Investtools.com*, No. 1:06-cv-210, 2006 WL 2037577, at *3 (E.D. Va. July 17, 2006) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999)); *Nissan Motor Co. v. Nissan Computer Corp.*, 204 F.R.D. 460, 466-67 (C.D. Cal. 2001) ("[A]ny permutations one may derive from adding a top-level domain ... to the second-level domain 'nissan' are indistinguishable as a matter of law"). Thus, it is clear that the Domain Names are confusingly similar to the OptOutPrescreen mark and there is a bad faith intent to profit from the similarity of the Domain Names to the OptOutPrescreen mark as discussed below.

### 3. The Registrant(s)' Bad Faith

The ACPA lists several non-determinative factors that a court may consider when determining bad faith, including a defendant's intellectual property rights in the domain name; the extent to which the name consists of the defendant's legal name; a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (II), (IV), (V), (VII). "The factors are given to courts as a guide" and need not be exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, the facts support a finding of bad faith by the registrant(s) of the Domain Names. The registrant(s) have no apparent intellectual property rights in the Domain Names, which each differ by only a couple letters from the OptOutPrescreen mark. *See* Compl. ¶¶ 4, 33-35, 42; 15 U.S.C. §§ 1125(d)(1)(B)(i)(I); *see also Fundacion I*, 2014 WL 3811162 at *7. Given the nature of the OptOutPrescreen mark and the federally mandated service provided through OptOutPrescreen.com by OOS, as well as the promotion of OptOutPrescreen by the FTC, the Domain Names do not appear to reflect the legal name(s) of the registrant(s). Compl. ¶ 33; 15 U.S.C. §§ 1125(d)(1)(B)(i)(II); *Fundacion I*, 2014 WL 3811162 at *8. On April 22, 2020, OOS provided the registered owner(s) of the Defendant Domain Names with notice of the alleged violations and a copy of the Complaint. *See* First Declaration of Ari Meltzer (ECF No. 2-2) ¶ 6 & Attach. 1. The notice was sent to the postal and e-mail addresses provided in the domain name registration records for the Domain Names. *Id*. Nevertheless, no one has filed a response to the Complaint on behalf of the Domain Names.

The registrant(s) have not engaged in bona fide noncommercial or fair use of the OptOutPrescreen mark in a site accessible under the Domain Names.  Compl. ¶ 34; 15 U.S.C. § 1125(d)(1)(B)(i)(IV).  The registrant(s) of the Domain Names have registered and used the domain names with intent to divert consumers away from OOS's online location at OptOutPrescreen.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Domain Names.  Compl. ¶ 36; 15 U.S.C. § 1125(d)(1)(B)(i)(V); *Fundacion I*, 2014 WL 3811162 at *8.  Additionally, the registrant(s) actions are not limited to a single domain name, but rather include the registration or acquisition of more than one domain name known to be confusingly similar to the marks of others.  15 U.S.C. § 1125(d)(1)(B)(i)(VIII); *Fundacion I*, 2014 WL 3811162 at *8.

Finally, the domain name registration records for the Defendant Domain Names all conceal the identity of the owner(s) of the, thus further demonstrating a bad faith intent to profit from Plaintiff's OptOutPrescreen mark.  Compl. ¶ 36; 15 U.S.C. § 1125(d)(1)(B)(i)(VII); *see Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467, 486-87 (E.D. Va. 2002) (finding that use of aliases "creates an atmosphere of deception" that supports finding of bad faith); *Montblanc-Simplo GmbH v. AChatStyloMontblanc.com*, No. 1:13-cv-1013, 2014 WL 107395, at *5 (E.D. Va. Jan. 3, 2014) (finding bad faith where true identity and correct service address have not been provided).

### D. The Domain Names Should Be Transferred to OOS.

The ACPA provides that the remedy for an *in rem* proceeding is either the forfeiture or cancellation of the domain names or the transfer of the domain name(s) to the owner of the mark.  15 U.S.C. § 1125(d)(2)(D)(i).  The domain name registry for each of the Defendant Domain Names is maintained by VeriSign within this judicial district and is thus subject to the Court's jurisdiction.  Accordingly, the Court may properly enter a default judgment and order the .com

domain name registry and any relevant domain name registrars to transfer ownership of the Domain Names to Plaintiff.  *See, e.g.*, *America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 453-55 (E.D. Va. 2003); *Fundacion I*, 2014 WL 3811162 at *8.

## IV. **CONCLUSION**

For the foregoing reasons, OOS respectfully requests that the Court grant this Motion for Default Judgment and order that VeriSign, Inc., the operator of the .COM registry, change the registrar of record for each of the Domain Names to Plaintiff's registrar of choice, GoDaddy.com LLC, and further order that GoDaddy.com LLC take the necessary steps to have Plaintiff Opt Out Services LLC listed as the registrant for the Domain Names.  OOS further requests that if this Motion is granted, the Court dismiss the Second Count of *in rem* Trademark Infringement without prejudice given that the only relief being sought may be ordered pursuant to the First Count of *in rem* Cybersquatting.

Dated: July 24, 2020   By:   /s/ Attison L. Barnes, III /s/
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (pro hac vice)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

*Counsel for Plaintiff*
*Opt Out Services LLC*

## **CERTIFICATE OF SERVICE**

I, Attison L. Barnes, III, hereby certify that on July 24, 2020, I electronically filed the foregoing by using the CM/ECF system.  I also sent copies to the registrant of the domain names at the postal and email addresses provided by the registrant to the registrar of the domain names or, if none is available, to the registrar of the domain names:

      Registration Private/Domains by Proxy, LLC
      DomainsByProxy.com
      14455 N. Hayden Road
      Scottsdale, Arizona 85260
      oproutprescreen.com@domainsbyproxy.com
      optoutprrescreen.com@domainsbyproxy.com
      (for oproutprescreen.com and optoutprrescreen.com)

      ABOVE.COM PTY LTD.
      6-8 East Concourse
      Beaumaris, VIC 3193
      Australia
      optiutprescreen.com@privacy.above.com
      opyoutprescreen.com@privacy.above.com
      (for optiutprescreen.com and opyoutprescreen.com)

      DNSPod, Inc.
      c/o Yantai Disp Technology Co., Ltd. Company Xinwang Digital
      2-4 Floor, Building G, #1 Siwei Rd., Beichen District
      Tianjin, China 300000
      abuse@dnspod.com
      (for optoutpredcreen.com)

      WhoIs Agent
      c/o Name.com, Inc.
      PO Box 1769
      Denver, Co. 80201
      abuse@name.com
      (for optoutpreescreen.com)

Domain Protection LLC
c/o Sea Wasp LLC d/b/a Fabulous
3500 N Causeway Blvd, Suite 160
Metairie, LA 70002
abuse@fabulous.com
optpoutprescreen.comregistrant@fabulouswhoiscompliance.com
(for optpoutprescreen.com)

/s/ Attison L. Barnes, III /s/
Attison L. Barnes, III (VA Bar No. 30458)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wiley.law

*Counsel for Plaintiff*
*Opt Out Services LLC*