UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| OPT OUT SERVICES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:20-cv-443 (TSE/TCB) |
| | ) |
| OPROUTPRESCREEN.COM, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned on Plaintiff Opt Out Services, LLC's ("Plaintiff") Motion for Default Judgment (Dkt. 8).[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion for default judgment.

I. BACKGROUND

A. **Procedural Posture**

Plaintiff filed its Verified Complaint on April 21, 2020 pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a). (*See generally* Dkt. 1.) When a representative for Defendant Domain Names failed to timely appear or otherwise respond in this matter, Plaintiff requested the clerk's entry of default on July 22, 2020, and the Clerk entered Defendants' default on July 22, 2020. (Dkts. 5-6.) Thereafter, Plaintiff filed the instant motion

---

[1] The relevant filings before the undersigned include Plaintiff's Verified Complaint ("Compl.") (Dkt. 1); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 8); Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp.") (Dkt. 9); and all attachments and exhibits submitted with those filings.

1

for default judgment and the supporting memorandum on July 24, 2020. (Dkts. 8-9.) Plaintiff initially noticed a hearing for August 28, 2020. (Dkt. 10.) Due to the COVID-19 pandemic, on August 20, 2020, the undersigned entered an order stating:

> [T]o proceed as cautiously and safely as possible, the Court will not hold a hearing on this matter. Instead, the Court will allow any interested party to file an objection within two weeks of the date of this Order. Accordingly, any objections to Plaintiff's motion for default judgment are to be filed with the Clerk's office by Wednesday, September 9, 2020 at 5:00 p.m. The undersigned will then issue a Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 11.)

No interested party filed a timely objection. Accordingly, the undersigned issues this Report and Recommendation to address Plaintiff's motion for default judgment.

**B.    Jurisdiction and Venue**

Before the Court can render default judgment against an Internet domain name pursuant to the ACPA, it must have (1) subject-matter jurisdiction, (2) *in rem* jurisdiction over the domain name, and (3) proper venue.

***First***, the undersigned finds that this Court has federal question subject-matter jurisdiction. Plaintiff brought this cause of action pursuant to the ACPA, a federal trademark statute. (*See* Compl. ¶¶ 13-17.) This Court therefore has original jurisdiction under 28 U.S.C. § 1331 (jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States"), 15 U.S.C. § 1121(a) (jurisdiction over federal trademark actions), and 28 U.S.C. § 1338(a) (jurisdiction over "any Act of Congress relating to . . . trademarks").

***Second***, the undersigned finds that the Court has proper *in rem* jurisdiction over Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). This subsection allows a plaintiff to file an *in rem* civil action against an Internet domain name if the plaintiff is unable to (1) "obtain *in personam* jurisdiction over a person who would have been a defendant in a civil

action"; or (2) find the person who would have been the defendant through due diligence. 15 U.S.C. § 1125(d)(2)(A)(ii)(I)-(II). Here, Plaintiff alleges that it was unable to obtain *in personam* jurisdiction over the individual who would have been the defendant in this civil action, as it believes the "listed registrant of the Defendant Domain Names is either a privacy service, a fictitious person/entity, and/or an individual residing outside the United States[.]" (Compl. ¶ 15.) Further, Plaintiff alleges that it was unable to find the identity of the current registrant and owner of Defendant Domain Names because the owner is concealing their identity. (Compl. ¶¶ 43, 44, 50.) Despite Plaintiff's due diligence—including sending notice of the alleged violation and its intent to proceed *in rem*, as well as publishing notice of this action as directed by the Court— Plaintiff was still unable to identify the individual. (Dkts. 3, 4.) Therefore, this Court has proper *in rem* jurisdiction over Defendant Domain Names pursuant to the ACPA.

**Third**, Plaintiff filed this lawsuit in the proper venue. Under 15 U.S.C. § 1125(d)(2)(C)(i), the domain name's "situs" is in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C)(i). Here, venue is proper because (1) the registry operator for .COM domain names, VeriSign, Inc., is located within the Eastern District of Virginia; and (2) Defendant Domain Name is a ".COM" domain name. (Compl. ¶ 17.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(n)(1) allows a federal court to assert jurisdiction over property if a federal statute authorizes it. Fed. R. Civ. P. 4(n)(1). The Rule further provides that the defendant must be given notice of the lawsuit "as provided in the [federal] statute or by serving a summons under [Rule 4]." *Id.* Under the ACPA, a plaintiff filing

3

an *in rem* action must serve the registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). If a plaintiff is unable to find or obtain *in personam* jurisdiction over the person who would have been the defendant, then the plaintiff can effect service of process by (1) sending notice of the alleged violation and intent to proceed *in rem* to the registrant of the domain name at the postal or e-mail address provided to the registrar; and (2) publishing notice as directed by the court. *Id.* § 1125(D)(2)(A)(ii)(aa)-(bb).

Here, Plaintiff has demonstrated proper service of process under the ACPA. On April 23, 2020, Plaintiff filed a Motion for Order to Publish Notice of Action. (Dkt. 2.) In that motion, Plaintiff demonstrated its compliance with the first requirement under the statute. Specifically, Plaintiff's counsel sent a letter to the current registrants of Defendant Domain Names using the email and postal addresses on file with the registrar of the domain names, notifying the registrant of this lawsuit and its intent to proceed *in rem*, and attaching a copy of the Verified Complaint. (Dkt. 2-2.)

The next day, the Court granted Plaintiff's motion and ordered Plaintiff to publish the Order providing notice of this lawsuit to the registrant of Defendant Domain Names in *The Washington Times* or *The Washington Post* once within fourteen (14) days of the Order. (Dkt. 3.) The Order further directed Plaintiff to file a declaration within twenty (20) days after entry of the Order describing its compliance. (*Id.*) On May 19, 2020, Plaintiff's counsel, Mr. David E. Weslow, filed a declaration and supporting documentation pursuant to the Court's April 24 Order. (Dkt. 4.) Mr. Weslow's declaration demonstrates that Plaintiff complied by publishing the Order in *The Washington Times* on April 30, 2020. (Dkt. 4 ¶ 5, Ex. A.)

The undersigned finds that Plaintiff fulfilled the steps under the ACPA and this Court's Order to properly effect service of process.

II. Findings of Fact

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

### A. The OptOutPrescreen Mark

Plaintiff Opt Out Services LLC was formed in 2004 to provide consumers with centralized means of "opting-in" or "opting-out" of insurance or credit offers pursuant to the Fair and Accurate Credit Transactions Act. 15 U.S.C. § 1681. (Compl. ¶ 19-20.) Plaintiff provides this service to consumers through its website, www.optoutprescreen.com. *Id.* The company is organized under the laws of Delaware, and its principal place of business is located in Jacksonville, Florida. (Compl. ¶ 5.)

Plaintiff's website averages over 24,000 site "hits" per day and has had over 9,000,000 visitor sessions in a single year. (Compl. ¶ 23.) The OptOutPrescreen mark has also received media attention and has been endorsed by the United States Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB). (Compl. ¶¶ 20-21.)

Plaintiff alleges that through the promotion and use of the OptOutPrescreen mark, it has become famous and/or distinctive throughout the United States in connection with Plaintiff's services, and it is therefore entitled to common law trademark rights. (Compl. ¶¶ 24-25.) In addition to the common law trademark rights Plaintiff has accrued since 2004, Plaintiff registered the mark on December 20, 2011 on the Principal Trademark Register of the U.S. Patent and Trademark Office "under the incontestable registration number 4073252.".[2] (Compl. ¶ 26, Ex. 8.)

---

[2] Plaintiff attached a copy of the federally registered trademark for OPTOUTPRESCREEN as Exhibit 8 to its Verified Complaint. (*See* Dkt. 1-2.)

### B. Unlawful Registration and Use of Defendant Domain Names

Defendant Domain Names represent typographical errors of Plaintiff's registered OptOutPrescreen mark. As such, Plaintiff alleges that Defendant Domain Names were created for the purpose of "typosquatting" – that they were created with the intent to obtain internet "hits" when Internet users make typographical errors while attempting to navigate to Plaintiff's website. (Compl. ¶¶ 28-29.) Defendant Domain Names are configured to display pay-per-click advertisements or to redirect users to other websites containing sales solicitation and malware. (Compl. ¶ 30.) The registrant of Defendant Domain Names therefore profits whenever an unsuspecting Internet user clicks on a third-party sales solicitation link and is diverted away from Plaintiff's services. (Compl. ¶¶ 30, 36.)

Plaintiff did not authorize the use of the OptOutPrescreen mark within Defendant Domain Names or the associated websites. (Compl. ¶ 32.) Furthermore, Defendant Domain Names neither reflects the intellectual property rights or legal name of its current registrant nor engages in bona fide noncommercial or fair use of the OptOutPrescreen mark in a website accessible under the domain name. (Compl. ¶¶ 33-34.) Plaintiff also alleges that consumers are likely to confuse the website displayed by the registrant of Defendant Domain Names with Plaintiff's legitimate online location. (Compl. ¶ 35.)

### III. EVALUATION OF THE PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations

regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Here, as discussed more below, Plaintiff only seeks the transfer of Defendant Domain Names under the ACPA (Count I), and requests that this Court dismiss the *in rem* trademark infringement claim (Count II) without prejudice, "given that the only relief being sought may be ordered pursuant to the First Count of *In Rem* Cybersquatting." (Mem. Supp. at 1 n.1.) Accordingly, the undersigned will only address the ACPA claim (Count I).

A. **Legal Standard**

Generally, the ACPA provides for a party to be liable to a trademark owner if that party has a bad-faith intent to profit from the owner's mark and registers, traffics in, or uses a domain name that is identical, confusingly similar to, or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Cent. Source LLC v. annualcreditreport.com*, No. 1:14-cv-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Accordingly, the ACPA allows the owner of a mark to bring an *in rem* proceeding against a domain name if it violates the owner's trademark rights and if the owner satisfies the various procedural provisions discussed above. *See* 15 U.S.C. § 1125(d)(2)(A). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain name to the owner of the mark. *Id.* § 1125(d)(2)(D).

To be entitled to relief, the plaintiff must prove a violation of "any right of the owner of a

mark," which encompasses rights against cybersquatting. *Id.* § 1125(d)(2)(A); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). The owner of a mark may therefore be entitled to *in rem* relief upon proving a violation of § 1125(d)(1), which creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's famous and/or distinctive mark, with a bad-faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). In sum, to establish such an ACPA violation, a plaintiff must establish: (1) its ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad-faith intent to profit from the mark. *See id.*

### 1. Plaintiff Possesses a Valid and Protectable Mark

Plaintiff must first demonstrate that it has protectable rights in the OptOutPrescreen mark. Here, the undersigned finds that Plaintiff has a protectable mark under common law and because the mark is registered with the USPTO.

First, at common law, trademark ownership can be acquired "by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). Here, as established above, Plaintiff has used the OptOutPrescreen mark exclusively and continuously in U.S. commerce for over 16 years (since 2004) in association with providing its services. (*See* Compl. ¶¶ 19-20.) Accordingly, the undersigned finds that Plaintiff is entitled to common law trademark rights in the OptOutPrescreen mark.

Second, the ACPA protects Plaintiff's mark because it is registered with the USPTO. The ACPA protects federally registered marks, and registration serves as *prima facie* evidence that a mark has acquired distinctiveness. *See* 15 U.S.C. § 1125(d)(2)(A)(i); *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Here, because Plaintiff has registered the

OptOutPrescreen mark with the USPTO, there is unrebutted *prima facie* evidence that the mark has at least acquired distinctiveness. (Compl. ¶ 31, Ex. B; *see also Central Source LLC v. annualcreditreport.com*, No. 1:14-cv-302 (AJT/JFA), 2014 WL 3891667, at *7 (E.D. Va. Aug 7, 2014).)

Finally, for protection under the ACPA, a plaintiff's mark must be distinctive and/or famous at the time of the defendant domain name's registration. 15 U.S.C. § 1125(d)(1)(A)(ii)(I)-(II). Here, Plaintiff pleads that the OptOutPrescreen mark (1) is currently distinctive and famous and (2) was distinctive and famous at the time of the unauthorized registration of Defendant Domain Names. (Compl. ¶¶ 24, 41.)

For these reasons, the undersigned finds that Plaintiff possesses a valid and protectable mark.

### 2. Defendant Domain Names Are Confusingly Similar to Plaintiff's Mark

Under the ACPA, Plaintiff must show that Defendant Domain Names are either identical, confusingly similar to, or dilutive of a distinctive mark owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see Doughney*, 263 F.3d at 367. If Defendant Domain Names and Plaintiff's mark are virtually identical, then they are "confusingly similar" under the ACPA. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) ("[I]n evaluating the similarity of two marks … the marks need only be sufficiently similar in appearance." (citation omitted)). Logically, this "confusingly similar" standard is satisfied when a domain name is identical to a plaintiff's mark. *See Agri-Supply*, 457 F. Supp. 2d at 663. Moreover, in the context of domain names, the mere presence of a top-level domain—such as ".COM"—"does not itself

have source-identifying significance." *Booking.com B.V. v. U.S. Patent & Trademark Office*, 915 F.3d 171, 185 (4th Cir. 2019), *as amended* (Feb. 27, 2019), *aff'd*, 140 S. Ct. 2298 (2020) (citations omitted).

Here, this standard is easily met. Defendant Domain Names only add ".com" and a single altered interior letter to Plaintiff's OptOutPrescreen mark, which as discussed above, is irrelevant in determining whether a domain name is identical or confusingly similar to a mark. Therefore, Plaintiff's mark and Defendant Domain Names are identical for purposes of the ACPA.

### 3. Registrant's Bad Faith

Lastly, the undersigned finds that the current registrant of Defendant Domain Names acted in bad faith. Relevant factors for this determination include: (1) the registrant's intellectual property rights in the domain name; (2) the extent to which the domain name consists of the registrant's legal name; (3) the registrant's bona fide noncommercial or fair use of the mark in a website accessible under the domain name; (4) the registrant's intent to divert consumers from the mark owner's website for commercial gain and in such a way that could harm the goodwill of the mark by creating a likelihood of confusion as to the source of the website; and (5) the registrant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(II), (IV)-(V), (VII). Courts may use these factors as a guide but are not required to exhaustively consider them. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, there are several indications of the current registrant's bad faith. First, Defendant Domain Names do not reflect the registrant's intellectual property rights. (Compl. ¶¶ 32, 42; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I).) Second, Defendant Domain Names do not reflect the current registrant's legal name, or any other name used to identify the registrant. (Compl. ¶¶ 33,

37-38; *see also* 15 U.S.C. § 1125(d)(1)(B)(II).) Third, the registrant has never engaged in any bona fide noncommercial or fair use of the OptOutPrescreen mark on a website accessible under Defendant Domain Names. (Compl. ¶ 34; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(IV).) Fourth, the registrant of Defendant Domain Names has indicated an intent to (1) divert consumers away from Plaintiff's legitimate online locations at optoutprescreen.com and (2) profit from that diversion by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendant Domain Names through its use of the domain names. (Compl. ¶ 36; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(V).) Finally, the current registrant of Defendant Domain Names supplied material and misleading contact information when registering the domain names, which supports a finding of bad faith. (Compl. ¶ 37; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(VII).) Upon review of the relevant factors and underlying facts, the undersigned concludes that the registrant of Defendant Domain Names acted in bad faith.

### B.     Conclusion

Plaintiff has satisfied the ACPA's procedural provisions and is entitled to relief under 15 U.S.C. § 1125(d). As a result, the undersigned finds that the Court may order the forfeiture or cancellation of Defendant Domain Names, or transfer ownership of Defendant Domain Names to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

### IV.  REQUESTED RELIEF

Plaintiff requests that the Court (1) enter default judgment against Defendant Domain Names on Count I of Plaintiff's Verified Complaint; (2) dismiss Count II of Plaintiff's Verified Complaint without prejudice; and (3) direct VeriSign, Inc. to transfer each of Defendant Domain Names to Plaintiff's domain name registrar of choice, GoDaddy.com LLC, and direct GoDaddy.com LLC to take all necessary steps to have Plaintiff listed as the registrant for the

domain names. The undersigned will consider each form of requested relief in turn.

### A. Entering Default Judgment on Count I

The undersigned found above that Plaintiff pled a claim upon which relief can be granted under the ACPA (Count I). As a result, the undersigned recommends granting Plaintiff's motion for default judgment, thereby entering default judgment in favor of Plaintiff and against Defendant Domain Names on Count I of Plaintiff's Verified Complaint.

### B. Dismissing Count II Without Prejudice

As Plaintiff is seeking default judgment under the ACPA claim (Count I) only, Plaintiff seeks dismissal of its *in rem* trademark infringement claim (Count II) without prejudice. Because the undersigned recommends entering default judgment under Count I, the undersigned also finds good cause to dismiss Count II without prejudice.

### C. Transfer of Defendant Domain Names to Plaintiff

As a remedy in *in rem* proceedings against a domain name, a court may order the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i). Here, the domain name registry for Defendant Domain Names is maintained by VeriSign, Inc., which is located in this Court's judicial district. (Compl. ¶ 17.) As such, upon entry of default judgment against Defendant Domain Names on Count I, the Court may order the registry to transfer ownership of Defendant Domain Names to Plaintiff. Because Plaintiff has pled a claim upon which relief can be granted under the ACPA and satisfied the procedural and jurisdictional requirements, the undersigned recommends that the Court transfer ownership of Defendant Domain Names to Plaintiff upon entering default judgment.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court (1) grant

Plaintiff's motion for default judgment (Dkt. 8), thereby entering default judgment against Defendant Domain Names and in favor of Plaintiff on Count I of Plaintiff's Verified Complaint; (2) dismiss Count II of Plaintiff's Verified Complaint without prejudice; and (3) direct VeriSign, Inc. to transfer Defendant Domain Names to Plaintiff's domain name registrar of choice, GoDaddy.com LLC, and direct GoDaddy.com LLC to take all necessary steps to have Plaintiff listed as the registrant for Defendant Domain Names.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 11, 2020
Alexandria, Virginia